**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS  DIVISION**

| | |
|---|---|
| **ALAN BRAMMER,** )<br>)<br>**Plaintiff,** )<br>)<br>**vs.** )<br>)<br>**ALLSTATE INSURANCE COMPANY,** )<br>)<br>**Defendant.** ) | **1:07-cv-05-WTL-TAB** |

<u>**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

This matter is before the Court on a motion for summary judgment filed by

Defendant Allstate Insurance Company ("Allstate").   The motion is fully briefed, and the

Court, being duly advised, **GRANTS** the motion for the reasons set forth below.

*Summary Judgment Standard*

Motions for summary judgment are governed by Federal Rule of Civil Procedure

56(c), which provides that summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  In ruling on a motion for

summary judgment, the admissible evidence presented by the non-moving party must be

believed and all reasonable inferences must be drawn in the nonmovant's favor. *Zerante*

*v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden

of proof on a particular issue may not rest on its pleadings, but must affirmatively

demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).  "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### Factual Background

The facts of record viewed in the light most favorable to Plaintiff Alan Brammer are as followed.  Plaintiff was involved in an automobile accident while driving his father's vehicle in Muncie, Indiana on November 10, 2000.  Charlene Watt, a passenger in the vehicle with which Plaintiff collided, was injured as a result of the collision. Michael Brammer, Alan's father, carried automobile insurance and a personal umbrella policy ("PUP") issued by Allstate.  The limits of the automobile policy were $100,000 per individual and $300,000 per accident.  The PUP provided $1,000,000 in excess liability coverage.

Charlene Watt filed a personal injury lawsuit against Plaintiff in an Indiana state court.  Allstate acknowledged that Michael Brammer's automobile insurance provided coverage for the accident and accordingly hired counsel to represent Plaintiff in Watt's suit.  During the course of the suit, Allstate concluded that Watt's claim had a settlement value of between $11,000 and $13,000 and that Alan Brammer was 100% at fault for the accident.  In response to a $100,000 settlement demand from Watt, Allstate made a final

settlement offer of $13,020.  Watt rejected the offer and the case went to trial, concluding

in a July 2004 jury verdict in favor of Watt in the amount of $627,000.

After the verdict, the amount of which took Allstate and the Brammers by surprise,

Plaintiff sought coverage from the PUP for the amount in excess of the limits of the

automobile policy.  The Allstate representative assigned to the claim told Plaintiff that he

was not covered under the PUP because the policy's definition of "insured person"

required that a family member reside in the policy owner's household in order to qualify

and Plaintiff did not live with his father; rather, he was married with children and had

been living in a home of his own for many years.  The Brammers informed Allstate that

Joseph Moyer, their Allstate agent, had assured them that the PUP would pick up where

the automobile policy left off and would cover Plaintiff and anyone else who was an

insured under the automobile policy.

Allstate tendered the full $100,000 per person bodily injury policy limits under the

automobile policy to the clerk of the state trial court, but refused to pay the balance of the

judgment and refused to post an appeal bond, maintaining their position that the PUP did

not provide coverage for Plaintiff.  Plaintiff's attorneys, who were being paid by Allstate

to pursue an appeal of the verdict, filed the appellate brief late, which led to the appeal

being dismissed.

Upon advice of outside counsel, Allstate filed a declaratory judgment action

seeking a determination that no coverage was owing under the PUP.  In April 2005, at the

suggestion of the Magistrate Judge assigned to the declaratory judgment action, Joseph

-3-

Moyer was deposed.  He testified that his sister had been the original issuing agent of the Brammers' policy; he had taken over their file when she retired.  He further testified that he typically provided clients with a pamphlet that referred to an umbrella policy as providing protection to the policy owner's family.  He testified that he had had no discussion with the Brammers prior to Plaintiff's accident regarding coverage under the PUP and that he did not recall whether he had such a discussion between the accident and the verdict; however, he was personally under the impression that the PUP would cover the part of the verdict that the automobile policy did not.  When he discussed the claim under the PUP with those handling it within Allstate, he was told that there was no coverage because Plaintiff was not a member of Michael Brammer's household.

After the depositions in the declaratory judgment actions were completed, Allstate and the Brammers reached an agreement to settle the declaratory judgment action pursuant to which Allstate agreed to pay the remainder of the jury award plus the accrued interest.  The settlement agreement contains a recitation which states that an appeal of the verdict in the Watt case would likely have been successful were it not for the appointed law firm's failure to file a timely brief, and expresses the intent of Plaintiff and Allstate to cooperate in pursuing a malpractice claim against the law firm.  The agreement also contains the following declaration:  "WHEREAS, it appears that coverage exists for Brammer under the Umbrella Policy as a result of an error by an insurance agent. . . ."  The judgment in the Watt case was paid in full by Allstate in October 2005.

*Discussion*

Plaintiff alleges in this case that Allstate acted in bad faith when it refused for over a year to provide coverage under the PUP and pay the remainder of the Watt judgment.[1] He further asserts that he suffered damages as a result of Allstate's delay in satisfying the judgment, including damage to his credit rating and resultant damage to his business interests and reputation.

Both sides agree that Indiana substantive law applies to Plaintiff's claims in this case and that an insurer in Indiana has a duty to act in good faith when dealing with its insureds.  To prove that an insurer's decision to deny coverage constituted bad faith, an insured "must establish by clear and convincing evidence that the insurer had knowledge that there was no basis for denying liability."  *Freidline v. Shelby Insurance Company,* 774 N.E.2d 37, 40 (Ind. 2002).  In other words, "a good faith dispute concerning insurance coverage cannot provide the basis for a claim in tort that the insurer breached its duty to deal in good faith with its insured . . . even if it is ultimately determined that the insurer breach its contract."  *Magwerks Corp.,* 829 N.E.2d 968, 976 (Ind. 2005).  However, Plaintiff correctly points out that "an insurer's duty to deal in good faith encompasses more than a bad faith coverage claim."  *Id.*

----

[1]Plaintiff's amended complaint also asserts that Allstate's refusal to pay Watt's $100,000 settlement demand shortly before trial constituted bad faith, but Plaintiff does not mention this assertion in his response to the instant motion.

> The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

*Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 519 (Ind. 1993).  Therefore even if there was a good faith dispute concerning coverage regarding a particular claim, it is possible that the insurer otherwise acted in bad faith in its handling of the claim.

Plaintiff argues in this case that his claim of bad faith encompasses more than simply Allstate's initial denial of coverage under the PUP.  He points to the fact that Allstate refused to post an appeal bond and pay the entire Watt verdict even though it was informed by his parents and their attorney shortly after the verdict that Moyer, their Allstate agent, had told them that the verdict would be covered by the PUP.  Moyer himself contacted the claims office to find out why Allstate believed the PUP did not apply and even mailed the claims office a two-page brochure discussing the PUP, but received no response.  Despite receiving this information, Allstate failed to investigate what representations Moyer had made to Plaintiff's parents until almost a year later when, during the course of the declaratory judgment action, the Magistrate Judge assigned to the case suggested that deposing Moyer and others would be helpful.  Based upon these facts, Plaintiff argues, "[i]t is evident that a jury could conclude that Allstate's conduct from the time of the judgment until the time it acknowledged coverage under the PUP policy, by clear and convincing evidence, constitutes bad faith entitling Alan to punitive damages."

-6-

The Court disagrees with the Plaintiff's application of the law to the facts of this case. "As a general proposition, a finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design or ill will." *Magwerks Corp.,* 829 N.E.2d at 977 (citation on internal quotation marks omitted). In this case, Plaintiff has pointed to no evidence of such a state of mind on the part of Allstate. Allstate's initial determination that Plaintiff was not covered by the PUP because he did not reside with his parents is clearly supported by the plain language of the policy. Because the Brammers disputed Allstate's determination, Allstate filed a declaratory judgment action seeking judicial guidance on the matter, something that is encouraged under Indiana law. *Masonic Temple Ass'n. of Crawfordsville v. Indiana Farmers Mut. Ins. Co.*, 779 N.E.2d 21, 29 (Ind. App. 2002) ("The proper response when an insurer questions whether an insured's claim falls within the scope of its policy coverage is to file a declaratory judgment [action].").

Plaintiff believes that Allstate should have investigated sooner his parents' report regarding the representations their Allstate agent had made to them. However, the lack of diligent investigation alone is not sufficient to support a bad faith claim, *Hickman*, 622 N.E.2d at 520; *Allstate Ins. Co. v. Fields*, 885 N.E.2d 728 (Ind. App. 2008), and "[p]oor judgment and negligence . . . do not amount to bad faith; the additional element of conscious wrongdoing must be present." *Spencer v. Bridgewater*, 757 N.E.2d 208, 212 (Ind. App. 2001). Plaintiff further points to the seven-month delay between the Watt verdict and the filing of the declaratory judgment action as evidence of Allstate's bad

faith.  However, there is simply no evidence from which a reasonable jury could determine that Allstate's lack of diligence–either in investigating the Brammers' position or in filing its declaratory judgment action–was due to a conscious decision motivated by "dishonest purpose, moral obliquity, furtive design or ill will."  In the absence of such evidence, Plaintiff cannot prevail on his bad faith claim.[2]

### *Conclusion*

For the reasons set forth in this entry Defendant's Motion for Summary Judgment is **GRANTED**.

SO ORDERED:  08/24/2009

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Michael Joseph Alexander
mjafedcrt@aol.com

Diana Carol Bauer
CARSON BOXBERGER LLP
bauer@carsonboxberger.com

Donald K. McClellan
MCCLELLAN MCCLELLAN & ARNOLD
gah241966@yahoo.com

Richard P. Samek
CARSON BOXBERGER LLP
samek@carsonboxberger.com

---

[2]In light of this ruling, the Court need not address the parties' arguments regarding whether Plaintiff can demonstrate that he was damaged by Allstate's delay in satisfying the Watt judgment and whether Plaintiff is entitled to punitive damages.